```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CADIA CAPITAL ADVISORS LLC           :
d/b/a/ RUBICON CAPITAL ADVISORS,     :
                                     :
              Plaintiff,             :
                                     :   22 Civ. 5847 (VM)
    - against -                      :
                                     :
FAGU LLC, MIGUEL ONETO TRUST,        :   DECISION AND ORDER
AND MIGUEL ONETO, AS TRUSTEE,        :
                                     :
              Defendants.            :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Cadia Capital Advisors LLC d/b/a Rubicon Capital Advisors ("Rubicon") brings this action against Fagu LLC, Miguel Oneto Trust, and Miguel Oneto, as Trustee (collectively, "Defendants"), alleging breach of contract, breach of implied covenant of good faith and fair dealing, breach of implied contract, unjust enrichment, and quantum meruit. (See "Complaint" or "Compl.," Dkt. No. 1-1.) On July 8, 2022, Defendants removed this action from state court pursuant to 28 U.S.C. Section 1441. (See Dkt. No. 1.) Defendants now seek an order dismissing, or otherwise staying, the action in favor of arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. Sections 3 and 4, and in compliance with Rule 12200 of the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Procedure

1

for Customer Disputes (the "Motion"). (See Dkt. Nos. 4, 11.) For the reasons set forth below, Defendants' Motion is GRANTED.

## I. BACKGROUND

A. FACTUAL BACKGROUND[1]

Rubicon is a registered broker-dealer and FINRA member. On January 18, 2019, Defendants entered into an agreement with Rubicon (the "Agreement," see Dkt. No. 1-1 at 20-35) for Rubicon to act as Defendants' exclusive financial advisor in connection with the sale of Defendants' membership interest in a solar-powered electrical generation project. In return for Rubicon's anticipated services, the Agreement provides that Defendants would pay Rubicon an initial set of fees, as well as an advisory fee calculated as a percentage of the total amount paid to Defendants for their membership interest once the interest sold.[2]

---

[1] Except as otherwise noted, the factual background derives from the facts pleaded within the Complaint. Except when specifically quoted, no further citation will be made to these documents, or the documents referred to therein.

[2] The parties' Agreement also provides that they "irrevocably submit[] to the non-exclusive jurisdiction of the State of New York over any action or proceeding arising out of or relating to this Agreement and . . . all claims in respect of such action or proceeding may be heard and determined in such courts of the State of New York." (See Dkt. No. 1-1 at 30 ¶ 21.) The Agreement is governed by New York state law. (See id.)

2

By March 2021, Defendants paid Rubicon the initial fees, but the sale of their membership interest remained pending. At that time, the parties amended the Agreement to limit and redefine the term "Transaction" to mean the sale of Defendants' interest to Hive Energy Limited ("Hive"). The parties set the Agreement to expire on April 30, 2021 to allow Defendants time to close on the Transaction with Hive.

Rubicon alleges that while the parties' negotiations to extend the Agreement were ongoing in March 2021, Defendants were simultaneously negotiating a sale of their interest with a different buyer, Greenalia SA ("Greenalia"), unbeknownst to Rubicon. On April 8, 2021, Hive declined to proceed with the Transaction, but Defendants requested that Rubicon continue to provide its services, including analyzing and engaging with alternative purchasers and providing Defendants with ongoing financial advice. Rubicon continued to provide these services to Defendants until it learned in July 2021 that Defendants had closed on a transaction with Greenalia. Rubicon contends that it provided services to Defendants for three months following Hive's decision not to close on the Transaction based on the supposition that Defendants were relying on Rubicon to find an alternative investor. At no

time did Rubicon know of Defendants' negotiations with Greenalia.

When Rubicon sought payment for its services following the Greenalia transaction, Defendants argued that they did not owe Rubicon anything because the Greenalia transaction had closed after the expiration of the parties' Agreement. Rubicon contends that by not paying, Defendants improperly used and benefited from Rubicon's services and intellectual property during Defendants' surreptitious negotiations with Greenalia, constituting a breach of the parties' Agreement.

B. PARTIES' ARGUMENTS

On July 14, 2022, Defendants filed a premotion letter requesting that the Court dismiss the action pursuant to Section 4 of the FAA, or, in the alternative, stay this action in favor of arbitration pursuant to Section 3 of the FAA. (See Dkt. No. 4 at 2-3.) Defendants argue that Rubicon must arbitrate this dispute at their request pursuant to FINRA Rule 12200 because Rubicon is a FINRA member, Defendants are its customers, and the dispute arose in connection with Rubicon's business activities.

Rubicon disputes that FINRA Rule 12200 applies here because the scope of the parties' contractual relationship is at issue. According to Rubicon, Rule 12200 allegedly requires

4

that the parties' dispute arise from a binding contract, and Defendants disagree that they were bound under the Agreement to compensate Rubicon for its services. (See Dkt. No. 10 at 2-3.) Rubicon posits that to proceed to arbitration, Defendants must first concede that they had a contract with Rubicon that applied to the Greenalia transaction. Defendants counter that this concession is not necessary because Rule 12200 requires only that Rubicon affirmatively allege that its claims arise from business activities with Defendants. (See Dkt. No. 11 at 2-3.)[3] Thus, the parties disagree whether Rule 12200 obligates them to arbitrate this dispute.

## II.  LEGAL STANDARD

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349 (2008). Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner

---

[3] On August 17, 2022, the parties informed the Court, by letter motion (see Dkt. No. 13), that the Court had their consent to deem their premotion letters as a fully briefed motion.

5

provided for in such agreement." 9 U.S.C. § 4. The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 114 (2d Cir. 2010).

Therefore, when a party moves pursuant to Section 4 of the FAA, "the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1998 (2d Cir. 1996)). If these requirements are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." Dean Whitter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985).

### III. DISCUSSION

Here, the parties' arbitration agreement arises from Rubicon's FINRA membership and FINRA's Code of Arbitration Procedure for Customer Disputes (the "Code"). FINRA is a "self-regulatory organization with authority to oversee securities firms." Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth. (Golden Empire II), 764 F.3d 210, 214 (2d Cir.

2014) (citation omitted). "Upon joining FINRA, a member organization agrees to comply with FINRA's rules[]" and is therefore "bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein." UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 648-49 (2d Cir. 2011).

Pursuant to Rule 12200 of the FINRA Code, FINRA members "must arbitrate a dispute . . . if: [A] Arbitration under the Code is either: (1) Required by a written agreement, or (2) Requested by the customer; [B] The dispute is between a customer and a member or associated person of a member; and [C] The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company." Id. (quoting FINRA Rule 12200). The Second Circuit has found that "FINRA Rule 12200 is a written agreement to arbitrate[,]" Golden Empire II, 764 F.3d at 214, and "must be interpreted in accordance with principles of contract interpretation." UBS Fin. Servs., 660 F.3d at 649; see also Citigroup Glob. Mkts. Inc. v. Abbar, 761 F.3d 268, 274 (2d Cir. 2014) ("The arbitration rules of an industry self-regulatory organization such as FINRA are interpreted like contract terms."). However, "[t]he analysis

7

differs from ordinary contract interpretation in that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3 164, 171 (2d Cir. 2011) (citation omitted).

Defendants have established that the parties are required to arbitrate this dispute because all three factors of Rule 12200 of FINRA's Code have been met. First, Defendants requested arbitration. Second, the parties do not dispute that Rubicon is a FINRA member and is bound by the FINRA Code, (see Dkt. No. 1-1 at 24 ¶ 6), or that Defendants were customers of Rubicon. (See Compl. ¶¶ 3-4, 8-9; Dkt. No. 4 at 3; Dkt. No. 10 at 2); see also Abbar, 761 F.3d at 275 (defining "customer" for purposes of FINRA Rule 12200 as one who, while not a broker or dealer, "(1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member"). What is in dispute is the final requirement of Rule 12200: whether the parties' "dispute arises in connection with the business activities of the member or the associated person."

Rubicon argues that although the Second Circuit has not yet decided the issue, district courts in the Circuit have found that the final requirement of Rule 12200 is not satisfied if the parties' dispute arises from an expired

securities-related contract, which is Defendants' position. (See Dkt. No. 10 at 2-3; see also Dkt. No. 4 at 2.) At bottom, Rubicon asks the Court to find that Rule 12200 cannot require arbitration if, in a breach of contract dispute, a defendant disagrees that they were bound by a written agreement.

Rubicon points to three cases that purportedly "indicate[] that in order to demand arbitration before FINRA, Defendants must first concede that they had a contract with Rubicon that applies to the Greenalia transaction." (Dkt. No. 10 at 3.). In terms of binding precedent, neither of the two Second Circuit cases Rubicon cites found that FINRA Rule 12200 requires a valid written agreement. (See id. (citing Abbar, 761 F.3d at 275; UBS Fin. Servs., 660 F.3d at 647).)

First, in Abbar, the Second Circuit established a "bright-line rule" for determining the bounds of the term "customer." See 761 F.3d 268 (defining "customer" as one who purchases a good or service from a FINRA member or holds an account with a FINRA member). The court found, without reaching the final requirement of Rule 12200, that an investor who held investments with a foreign affiliate of a FINRA member did not qualify as a "customer" for purposes of Rule 12200. Second, before the bright-line rule was established in Abbar, the Second Circuit in UBS Financial Services found

9

that an issuer of bonds, structured as auction-rate securities, was a customer of a broker-dealer responsible for facilitating the auctions because the issuer purchased auction services from the broker-dealer, who also happened to serve as an underwriter. See 660 F.3d at 652. The majority held that although the dispute concerned plaintiff's role as underwriter, the auction services transactions establishing defendant's role as "customer" were integrally related to plaintiff's underwriting services, and therefore satisfied Rule 12200's final requirement. See id. at 652-53.

Neither of these Second Circuit cases cited by Rubicon support its construction of Rule 12200. If anything, the UBS Financial Services decision supports a finding that Rubicon's claims meet the final requirement of Rule 12200.

Lastly, Rubicon posits that "courts in this circuit" have interpreted the Circuit cases described above to find that no customer relationship exists "where the arbitration demand was based on a prior securities-related contract between the parties." (Dkt. No. 10 at 2-3.) Rubicon cites one case, Sagepoint Fin., Inc. v. Small, in support of its position. No. 15 Civ. 571, 2015 WL 2354330, at *4 (E.D.N.Y. May 15, 2015). Sagepoint, however, is not on point. Defendant in that case invested with a third party that was once a

10

registered representative of the FINRA member plaintiff, but defendant's investment took place four years after the third party had any association with the FINRA member. See id. Thus, the court held that Rule 12200 does not "permit arbitration against a FINRA member on the basis of a customer relationship its representative maintained during a time entirely removed from his or her affiliation with the member." Id. Because defendant's investment activity lacked any "temporal nexus" with the FINRA member, the court held that defendant was not plaintiff's "customer" within the meaning of Rule 12200. Id.

Not only can Sagepoint be distinguished because the court never reached Rule 12200's final requirement, but factually Rubicon and Defendants do not have the same attenuated relationship that was present in Sagepoint. Throughout Defendants' alleged use of Rubicon's services, Rubicon remained a FINRA member. Without Sagepoint applying to the present action, Rubicon fails to cite, and the Court does not find, any decisions supporting Rubicon's narrow construction of FINRA Rule 12200's final requirement.

Accordingly, the Court is not persuaded that the final requirement of Rule 12200 should be construed as Rubicon requests -- "arises in connection with the business activities of the member" is simply not synonymous with

11

requiring a written agreement. Defendants do not need to concede that they had a binding contract with Rubicon during Defendants' negotiations with Greenalia to enforce the parties' binding arbitration agreement under the Code. Rubicon's construction not only undermines a plain reading of the Rule's text, but also would result in the peculiar situation that for any breach of contract matter to proceed to FINRA arbitration, a defendant must first accept that it is bound by a written agreement with plaintiff, the very issue in dispute. If this were the case, very few matters would proceed to arbitration, which could not be the intent of FINRA's Code or of the parties that submit to the Rule. Instead, a proper construction of Rule 12200 provides that because Rubicon's claims arise from its business activities -- specifically the financial services it provided to Defendants -- and all other requirements of Rule 12200 have been met, the Court must issue an order compelling the parties to comply with their agreement to proceed to FINRA arbitration under the Code. See 9 U.S.C. § 4; Dean Whitter, 470 U.S. at 218 (finding the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration" where a valid arbitration agreement exists).

12

**ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Fagu LLC, Miguel Oneto Trust, and Miguel Oneto, as Trustee (Dkt. No. 4) to compel plaintiff Cadia Capital Advisors LLC, d/b/a Rubicon Capital Advisors, to arbitrate the parties' underlying dispute in this action is **GRANTED,** and it is further

**ORDERED** that the parties proceed to arbitration pursuant to the Financial Industry Regulatory Authority Code of Arbitration Procedure for Customer Disputes Rule 12200, and it is further

**ORDERED** that the Clerk of Court is directed to dismiss the complaint in this action (Dkt. No. 1-1) without prejudice, pending the outcome of the arbitration proceedings the Court has compelled herein.

**SO ORDERED.**

Dated: New York, New York
      28 September 2022

_____
Victor Marrero
U.S.D.J.